The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Good morning. And be seated. Welcome to the Fourth Circuit. We're ready to hear argument in our first case, United States v. Tyrone Davis. May it please the Court, Lawrence Rosenberg. I'm going to be introducing our first oralist. I would like to introduce Cameron Davis, who is a qualified third-year student at the West Virginia University College of Law. Mr. Davis will be presenting the argument. All right. Thank you. So Mr. Davis will present the argument on behalf of Mr. Davis. May it please the Court. The District Court's cursory order that contained a mere one page of analysis is deficient and constitutes legal error for two reasons. First, the order did not provide the adequate explanation necessary to justify an above-guideline sentence. And second, the District Court did not consider any post-sentencing mitigating evidence. These are issues that this Court reviews de novo and this Court should reverse. This Court outlined in United States v. Martin and again in United States v. McDonald that the sentencing judge must satisfy the appellate court that they have a reasoned basis to exercise their decision-making authority. The United States Supreme Court in United States v. Dillon outlined a two-step method. Both parties agree that the first step is satisfied, but at the second step, the quote from United States v. Dillon is that at step two, 3582C2 instructs a court to consider the 3553A factors. This necessarily includes 3553A6. And the District Court judge did not address sentence disparities at all in their order. Well, does it matter that this is not an initial sentencing? This is a resentencing? It does matter, Your Honor, but the District Court judge still has to explain how they came out the way they did and why this particular criminal defendant should be sentenced differently from other similarly situated defendants who commit the same offense. So what are the similarly situated defendants that Mr. Davis gave to the District Court below? And as comparators, right, because he's responding to arguments, who are the similarly situated defendants that he pointed to in this proceeding? Your Honor, he didn't point to any additional similarly situated defendants. So do you think the District Court has an obligation to go to the Sentencing Commission and acquire that information? What disparity information was the District Court required to do here? Your Honor, our sole point is that if Mr. Davis was sentenced after the guidelines went retroactive or after the retroactive guidelines went into place, he would have received a different sentence. Why? Because the District Court... He would have had a different guideline. It seems like to me what the District Court judge said here is that he would have gotten the same sentence because he's a bad dude. No, Your Honor, at the first sentencing, the District Court judge explicitly tied that sentencing to the guidelines. He said that he wasn't going to do an upward departure or an upward variance, and that's a J-54. So the District Court judge initially tied Mr. Davis' sentence to the guidelines. And you read that, you say that we should read that to say that in doing so, had the guidelines been different, the District Court would have necessarily followed those guidelines? Yes, Your Honor, that is what we're saying. That's the implication, just from what you've got, you think that's a necessary implication? Yes, Your Honor. When the District Court judge goes on, he says, and this is also again quoting, the reason that he's not doing an upward departure or a variance, and that Mr. Davis' best argument is that the mental health issues, the IQ issues, the ADHD, the bipolar, that's what's driving the bus, meaning Mr. Davis' behavior, and that's why he was not going to do an upward departure or a variance that the government recommended in the first instance. When you take that, the fact that the District Court judge explicitly sentenced him to a within-the-guidelines sentence . . . If we reject that premise, so if I just don't think that's an accurate way to think about it, a District Court who sentences somebody to a given term based on the full balance of inquiry, that that necessarily means that were the guidelines different, that he would have applied the lower guidelines instead of the 70 months, which he found to be no greater than necessary to serve the ends of sentencing? Does that eliminate this argument? Is this the premise of the argument? This is a premise, Your Honor, and it's a factual inquiry, and the District Court judge here, all we can say is he did rely on the guidelines in the initial sentence. He also, during the original sentencing . . . But you don't think he didn't rely solely on the guidelines, right? Yes, Your Honor, we do. We think that he sentenced him to a within-the-guidelines sentence. He said as much. And you think that that was based solely on the guidelines? Yes, Your Honor. Without the consideration of any other 3553A factors? Well, he used the 3553A factors to determine that this was a within-the-guidelines type of offense. Given the 3553A factors and the mitigating evidence . . . That means that he didn't just rely on the guidelines, though, right? I mean, that is correct, Your Honor, but he did explicitly say that this was going to be a within-the-guidelines sentence. He wasn't going to do an upward departure variance. And Mr. Davis presented mitigating evidence after that initial sentencing hearing and the district court judge did not address it at all. The district court judge gave no . . . Is this the assault and disciplinary violations? Yes, Your Honor. Yes. Well, didn't the district court . . . did consider the disciplinary infractions in its re-sentencing? So, can we assume that the district court also considered the mitigating factors? No, Your Honor. You have to look at the face of the order and the district court judge only considered negative evidence that cuts against Mr. Davis. He didn't consider any other positive evidence that Mr. Davis presented to the court. Did he mention it at all? No, Your Honor, not at all. Your position is that in this type of a proceeding that the district court must expressly mention each argued mitigating evidence? That's your position? Yes, Your Honor. Every non-frivolous argument that is . . . Must be expressly mentioned? Yes, Your Honor. Do you have case law supporting that? Yes, Your Honor. We do. This court and Martin and McDonald both say that when a criminal defendant presents mitigating evidence . . . I think the words are a mountain of mitigating evidence. Right? Don't we have plenty of cases where there wasn't a mountain and we said you don't have to explicitly list every single piece? There's a presumption, I think, that works, doesn't it? Well, Your Honor, there is a presumption, but I just want to be clear that Martin and McDonald didn't say that you have to present a mountain of mitigating evidence. They just said the defendants here have presented a mountain. It's been called a host of mitigating evidence. It's just been called mitigating evidence as well. They didn't say you have to have two decades of mitigating evidence in order to rebut the  I think that presumption relies on United States v.  United States v. LaGree, it limits itself in two very important ways. In the sentence that says a district court's consideration of a defendant's arguments, immediately after that there's a parenthetical United States v. Davis that says in non-departure cases, absent contrary indication, it's presumed a district court addressed the arguments, but here Mr. Davis, he is serving a higher sentence than he would have if he were sentenced previously. So LaGree doesn't stand up there and also LaGree expressly says that Mr. LaGree, the defendant, did not present any mitigating evidence and he could have. Again, this court says that in Martin, this court says that in McDonald, this court says that in United States v. Bacone, which is an unpublished case, but it says when the defendant presents mitigating evidence, the district court has to address it and it has to give an explanation and not doing so is legal error. Both of those things occurred here. The government's argument effectively and the government's broad reading of United States v. Dillon effectively forecloses appellate review. The very broad language of Dillon that a 3582C2 proceeding is not plenary resentencing goes to the holding that a district court doesn't have the authority to reduce a criminal defendant's sentence below that of the amended guideline range. That is where that language comes from. Then the Supreme Court in United States v. Chavez-Mesa says that in some cases more explanation is necessary and that just because these are 3582C2 proceedings, the government does not automatically win. What was the order like in Chavez-Mesa, the district court's order? The order in Chavez-Mesa was a court form, it was a form order where the district court checked a box and said, I've considered the 3553A factors . . . Did he have mitigating evidence from after his sentencing? He was attempting to receive his GED, Your Honor. Did the court talk about that in its form order? It was . . . no, no, Your Honor. The Supreme Court said that was okay? Your Honor, the Supreme Court said that was okay, but the Supreme Court also spent pages noting that in that situation the defendant received partial relief, which we do not have here. The defendant there got nearly everything that they were asking for and in that circumstance . . . Why does that distinction . . . I mean, that's like a Tuesday-Thursday distinction, right? I took Judge Reshing's point to be you have advocated a rule that says at the granular level, the district judge must address every piece of mitigating evidence that's non-frivolous expressly, right? It must talk about it, right? It's got a little tick box, it's got to go through and say them. Obviously, that didn't happen there, right? The distinction that he got some relief or not, if your rule is there's a district judge has literally got to tick through every piece of evidence, like tried to get his GED, right, like maintain job, right, and address each one of those expressly, then Chavez-Meza would have to come out differently. The rule you've suggested would require the Supreme Court's decision to have come out differently. I don't think so, Your Honor, because 3355A6 was not implicated there. We do acknowledge that . . . I'm sorry, explain why that matters? Because the defendant there got nearly everything that they asked for . . . Why does that implicate A6? Because he was sentenced, the effect of the grant was that he got nearly everything he asked for. He was sentenced . . . Why does that affect A6? Who are we comparing him to? We're comparing him to what would have happened if he were sentenced on different . . . on the retroactive guidelines, Your Honor. And I . . . But A6 addresses like sentencing disparities, right? So you've got to point to somebody else that's similarly situated. Your Honor, we don't think that you have to actually find people and say that these people were sentenced differently, and therefore we just think that it creates a situation where Mr. Davis is sentenced differently. But how do we know he's sentenced differently if you're saying you don't have to provide other examples of different sentences? Based solely, Your Honor, on the fact that Mr. Davis would have been sentenced differently, it creates the possibility that if criminal defendants who conduct the exact same behavior and have the exact same background as Mr. Davis, he would receive . . . But how is it that we know he would have been sentenced differently? Because the district court judge . . .  Oh, sorry, Your Honor. Go ahead. The district court judge explicitly sentenced him to a within the guidelines sentence. And I'd like to . . . Oh, okay. That's back to your initial . . . Oh, sorry. Go ahead. Just to clarify, this is the same district court, right? This district court said two years ago, 70 months is right for this defendant. 70 months is appropriate. It's not more than necessary, but enough. And then two years later, this same judge denies the motion to reduce the sentence and concludes that 70 months is still appropriate. That is correct. It's the same judge. But the judge necessarily could not have considered the post-sentencing . . . the post-sentence mitigating evidence. Yes. It necessarily could not have?  Why is it that it could not have? Because this court has said that when the original sentencing judge rules on the 3582C2 motion . . . No, no. But at the time, there were two decisions, right? The judge said 70 months was right both times. And the second time, right, in this sentencing, I thought you were saying he could not have considered the post-sentencing mitigation evidence. Well, he has to talk about it, Your Honor. We don't know if he considered it or not. When you said that the district court judge could not have considered the post-sentencing mitigation, you were talking about in the initial sentence? Correct, Your Honor. Yes. Whenever the district court judge originally sentenced the criminal defendant, then after that point, the district court judge doesn't have a special familiarity with the mitigating evidence from that point forward. And they have to address it in the order and they did not do that. But isn't it significant that the district court judge did have a familiarity with this particular defendant and his history and circumstances? It is, Your Honor. And it's also significant that the district court judge outlined ways that Mr. Davis could rehabilitate himself in the original sentencing. Mr. Davis went to mental health and he's responded well to mental health. I thought the district court said he's demonstrated a lack of adequate rehabilitation in the court's order denying relief. The court actually found a lack of adequate rehabilitation. That's our point, Your Honor, is that you can't evaluate that sentence unless you see the district court judge weighing mitigating evidence versus the offenses that Mr. Davis had in prison. You can't do it on the face of the order. Wait. So we have to disregard? So the district judge got everything before him. He concludes this guy is not rehabilitated and you think that we have to say that we should ignore that because he didn't tick through the sort of allegedly mitigating factors that were raised? Your Honor, we're not. We're not. Oh, sorry. I'm just trying to understand the argument. The argument is the sentence that Judge Rushing just pointed you to you think is effectively like null because he didn't tick through expressly the items that were raised. Your Honor, just if I can answer your question really quickly. We're not saying that the district court judge has to tick through every argument just serious non-frivolous arguments which we presented. The district court judge. So yes. Every non-frivolous argument because he didn't say the word GED. The conclusion that he was not rehabilitated we have to disregard. Maybe even referencing the fact that Mr. Davis has conducted substantial rehabilitative efforts in his time in prison. How much they have to say. Okay. You have some time on rebuttal. Thank you, Your Honor. Thank you. All right. Mr. Sawyers. Your Honors and may it please the court. Reed Sawyers for the United States. I want to pick up where the colloquy with my friend left off. The district court here did address the central thesis of Davis' argument for a reduced sentence that he was being rehabilitated and that he was not a threat to the public and the district court did so by explaining that Davis' serious disciplinary infractions while incarcerated demonstrated that he had not been rehabilitated and precluded a reduced sentence. As this court explained in Moody, no more is required and a district court is not required to tick through each piece of purportedly . . . Well, where in the district court's order did the district court mention the mitigating factors at all? It's four and a half pages. I'm looking for it. The district court did not expressly mention the mitigating factors, but you do not need to do so to . . . How do we know that the district court made an individualized assessment of those mitigating factors? Because he rejected the argument. Those mitigating factors were put forth to support the argument that Davis was being rehabilitated and the district court rejected that argument. And so, which sentences here in this order would you have me focus on to understand that the district court rejected that argument? The sentences on JA-96, these disciplinary violations demonstrate a lack of adequate rehabilitation and the need for defendants' continued incarceration under his original sentence. And the sentence before that and the cite to Concepcion after that making clear that the district court is considering post-sentencing evidence and in none of the cited 3582 cases where this court remanded for additional explanation did the district court consider post-sentencing rehabilitation. It was simply categorically absent. Here, Davis is attempting to fly spec the district court's consideration of post-sentencing rehabilitation, which it rejected. And just like if I, you know, asked a colleague, do you want to go to a tobacco company tonight? It's a great restaurant. They have great steaks. The service is great. And she replied, no, I found a piece of glass in my soup. I don't want to go. We wouldn't say she was ignoring my arguments or that she hadn't considered my evidence in support of those arguments. We would understand that in ordinary English you can reject an argument in the same way the district court did. So here without saying expressly, which to be clear, outweighs the evidence of post-sentencing rehabilitation, you would put forward. I also want to be clear that Davis is simply wrong, that there is a categorical obligation to always address post-sentencing rehabilitation. As the court made clear in Chavez Mesa, the district court, or excuse me, the defendant did argue post-sentencing rehabilitation. Likewise, in High and Centeno Morales, the prisoner there also pointed to evidence of post-sentencing rehabilitation. But in all three of those cases, this court and the Supreme Court made clear that the district court was not required to specifically address that. And the standard is not non-frivolousness. Because in all three of those cases, it would not have been frivolous. It would not have been an abuse of discretion for the district court to grant a reduced sentence in High and Centeno Morales or to grant more of a reduced sentence in Chavez Mesa, based on that evidence. But this court has made clear that to overcome the Lugree presumption requires substantial, significant, a mountain of evidence. In Centeno Morales, this court, just last year. But just because it was a mountain of evidence in one case doesn't necessarily mean that a mountain of evidence is required in another case. It's true that a mountain, but this court has always used adjectives like significant and substantial. And in Centeno Morales, the court made clear that it is the exception, not the rule, that post-sentencing evidence will be sufficient to overcome the presumption. And I just want to emphasize the significance of Davis's post-sentencing disciplinary infractions here. The only thing exceptional about his post-sentencing behavior is how poor it was. He threatened a guard when he was placed in restraints. He threatened to call his people in Richmond to have the guard murdered, to have the guard's children murdered. And then he was found with a cell phone he could have used to carry out that threat. So we are nowhere close to overcoming that presumption through post-sentencing evidence. And this court has made clear in Centeno Morales that there's no rule that if you consider a post-sentencing disciplinary infractions, you have to tick through the evidence of post-sentencing rehabilitation. There, the district court expressly discussed . . . But shouldn't the district court be required to at least acknowledge that the mitigating factors exist and that appellant is arguing that those require him to be . . . to receive a reduced sentence rather than just saying nothing at all? Well, two answers to that, Your Honor. One, I think by mentioning rehabilitation, the district court did address that. If he hadn't put forward . . . Is there a case somewhere where we say that mentioning rehabilitation is sufficient? No, because in none of the cases where this court has remanded did the district court consider it at all. So this . . . Here, the district court did far more than the typical case. He had a five-page reasoned order. In most of these cases, the reason . . . the orders are one sentence, one paragraph of form order. And to answer the second part of your question, in the ordinary course, the district court is entitled in a 3582 proceeding due to its limited nature, due to the fact that a sentence is not being imposed, due to the fact that 3553's explanation requirement does not apply, is entitled to simply issue a form order, as we know from Smalls and Legree and Chavez-Mesa. So this district court here did far more than that. But I think, frankly, here the district court would have been entitled to simply issue a form order that said that it had considered the 3553A factors, and I don't think it can be faulted for doing far more than that. I also wanted to talk about . . . Does it make . . . I'm making sure I understand the argument that you're making. In the defendant's motion below, the mitigating evidence he put forward, he says it's all about the focus on his rehabilitation, right? And so the GED is about his rehabilitation, right? The maintaining employment is about rehabilitation, right? The mental health treatment is about rehabilitation. The plans, I don't know if this is considered mitigating, but he has plans to get a CDL, right, is about rehabilitation. These are all things that he's putting forward under the bucket of rehabilitation. And then the district court obviously rejects that and says, in fact, the evidence shows that he is not rehabilitated. Is that . . . Do you think, at a level of generality, that suffices? So to reject the argument that he is rehabilitated suffices to reject all of the sort of predicates to that? Yes, Your Honor. I think two things. One, Moody made clear that a district court need only reject the central . . . address the central thesis of a defendant's argument. It need not tick through all the supporting data points. So I agree absolutely that by rejecting the broad argument, you reject all the supporting data points. And so, just to make sure I understand that, it might not matter, but it would require a different argument if his mitigating argument supported different theses. So, hard to imagine here, but, like, imagine he talked about the need to support a child, right? And then he also talked about this rehabilitation piece as two separate categories of mitigating evidence. In that instance, right, the need to support a child would require a different analysis than the rehabilitation evidence, which the district court, like, plainly and expressly rejects. Yes. I want to be clear that once the Lagree presumption has been overcome, as this court made clear in Moody, the district court needs to address the central thesis of the defendant's argument. So you would be correct there that if there were multiple arguments, the district court would need to address all of them. But I do want to be clear that in the ordinary course, the district court does not need to engage with any arguments because it is entitled to issue a form order. And I want to get to that. Davis is simply wrong that there is a categorical explanation requirement that applies to 3582 proceedings. This court has rejected that precise argument in Peters and Smalls and has made clear that in order to overcome the presumption, you need substantial, significant, exceptional evidence, as I've discussed previously. On the A6 issue, the Supreme Court in Gall made clear that by properly calculating the guidelines range and by discussing the guidelines range, a court has sufficiently considered A6. Here, defendant did not make any specific A6 argument below. He did not mention A6. He did not mention disparities. And the district court, in his order, said that he considered the impact of the revisions to the sentencing guidelines. He calculated the amended guidelines range. So I don't think any additional consideration on A6 would be required, even if we had somehow gotten past the LaGree presumption. On the LaGree presumption, Davis is simply wrong that it does not apply where the amended... the original sentence is above the amended guidelines range. In Smalls and Peters, this court made clear that it stems from the limited nature of the 3582 proceeding, not from anything having to do with the guidelines. And consequently, it applies to the first step, which there in Peters was about whether the district court had made a drug quantity finding, which, obviously, it triggers the guidelines, but it has nothing to do with the guidelines. And in Davis, the 2024 case, Davis, this court applied the presumption to the first step of compassionate release, extraordinary and compelling reasons, which, again, typically has nothing to do with the guidelines range. We also cited... Now, to be clear, in Davis, the court ultimately found the presumption overcome based on the defendant's exceptional rehabilitation there. He had completed ten courses. He had no disciplinary infractions for a period of eight years. He had documentary evidence, glowing letters, and the huge gap between his original 210-month sentence and the amended 92- to 115-month guidelines range. But the fact that the court found the presumption overcome just demonstrates that it applies in the first instance, even where the original sentence is above the amended guidelines range. Likewise, we cited in our briefs May and Robinson, and if you look to the district court dockets, the district court orders there, docket 322 and 45, respectively, you can see that those sentences were above the amended guidelines range. So the Lugree presumption applies regardless of where the original sentence was. If your honors have no further questions... All right, thank you. Thank you. Three points on rebuttal. Saying the word rehabilitation is not enough and it doesn't go to the underlying or central thesis of Mr. Davis' argument. Mr. Davis is... So what is the central thesis of Mr. Davis' argument when he talks about, sorry, I just put it down, but getting a GED, keeping a job, and doing mental health treatment? Because the actual briefing says that that's about rehabilitation. What do you think it's about? Some of those go to rehabilitation, Your Honor. We believe in some way it can be his rehabilitative mental health, but it's more specific than just rehabilitation. If the standard is the district court judge just mentioned the word rehabilitation, then we're back to where we were before Martin and McDonald where they could just sign a check form saying that I've considered the 3553A factors. Saying the word rehabilitation is not enough. No, no, but back up. So what I'm asking is a different... I understand your conclusion that you think this is not enough. What I'm asking is the arguments that were put forward, let's use GED, maintained employment, and began mental health treatment, right? I read those based on the, you know, briefing that Mr. Davis filed below to be all about rehabilitation, right? Sentence me to less time because I've shown good rehabilitation. GED, employment, and mental health. They reflect some rehabilitation, right? That seems to make sense. You stood up and I thought you were saying is that no, no, no, they're not about rehabilitation. They're about something else. What is the something else if they're not about rehabilitation? Your Honor, they are about rehabilitation. Are they about anything other than rehabilitation? No, Your Honor, but it's more specific than just saying the word rehabilitate. I don't think that the criminal defendant, Mr. Davis, has shown sufficient rehabilitation. He's made very strong, more specific arguments than that, Your Honor. And also... And those strong... is that he enrolled in GED courses, whether he attended or passed them or did anything in them is unknown, that he maintained employment, and that he began, although may not be continuing, mental health treatment. Those are the strong arguments that he enrolled in GED, he began mental health treatment, to what extent or for how long, we don't know, and that for some period of time he maintained employment. Yes, Your Honor, and those are the exact same types of arguments that the defendants made in Martin and McDonald. They're the exact same types of arguments made there, and Mr. Davis hasn't had an outburst due to his mental health in over two years, Your Honor. Also, I just want to note that this court in United States v. Davis did find that when there's a 3553A6 implication, that's not the type of simple case outlined in Chavez Meza. I can't let that go by. It's not the same as McDonald, right? You've read McDonald. Yes, Your Honor. They obtained their GEDs, undertook significant coursework, engaged in prison programming, earned good time credit for good behavior, earned low levels of security clearance. In Martin, they were elderly and amassed uncommonly significant rehabilitation records, low security facility. They were allowed to work outside the prison because no one had seen someone that rehabilitated. That's not the same, is it? It's not the same, Your Honor, but in United States v. McDonald, one of the defendants there had a violent offense, and I know that they were in the prison longer, but they're the exact same types of arguments. And Mr. Davis has had a good record since threatening to kill somebody. Sorry. Applying for a GED program might be the same type of argument as obtaining a GED, but you recognize they're different. Yes, Your Honor. I just want to also mention out that amount of mitigating evidence, it should be about the quality, and I acknowledge that, but if a prisoner is sentenced to an underlying offense that doesn't allow for a long enough prison sentence to acquire a decade plus of mitigating evidence, then they're automatically foreclosed, and that can't be right because the length of your sentence should correspond with the seriousness of your offense. And if that's the rule, then this court, or a rule like that, would effectively undercut anybody who isn't sentenced to a decade plus. They can knock time off your sentence with good time credits, but if you threaten to kill a prison guard and his family, you're not going to get good time credits, and you're going to stay longer and get a chance to show that you're rehabilitated. Isn't that right? That is correct, Your Honor, and Mr. Davis has shown that he has rehabilitated. I think I'm running out of time, so for these reasons, we ask this court reverse. Thank you. All right. Thank you. We'll come down and greet counsel and proceed to our next argument. Thank you.
judges: Stephanie D. Thacker, Julius N. Richardson, Allison J. Rushing